UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SHAIR ALI,

      Petitioner,

v.                                        Case No. 2:26-cv-757-JES-DNF

U.S. IMMIGRATION AND
CUSTOMS ENFORCMENT, et al.,

      Respondents.

                             /

## OPINION AND ORDER

Before the Court are Petitioner Shair Ali's petition for writ of habeas corpus (Doc. 1) and the government's response (Doc. 6). For the below reasons, the Court grants the petition to the extent set forth in this Order.

## I.   Background

Shair Ali is a native of Pakistan who entered the United States on November 1, 1990 as a temporary visitor. (Doc. 6 at 1.) He remained in the United States beyond the time authorized. (Id.) On November 1, 1994, Ali filed an application for asylum. (Id. at 2). On June 21, 1996, the immigration judge denied Ali's asylum petition and granted him voluntary departure in lieu of removal. (Id.) Petitioner appealed the immigration judge's denial of his asylum petition, but on May 5, 2000, the Board of Immigration Appeals (BIA) dismissed his appeal, and allowed him 30 days to depart the United States. The BIA ordered that if Ali failed to

depart voluntarily, he "shall be ordered removed [from] the U.S. to Pakistan."  (Doc. 6 at 2; Doc. 6-6 at 1).  On November 13, 2002, the BIA denied Petitioner's motion to reopen.  (Doc. 6-6 at 1).  The BIA denied his motion to reconsider on February 14, 2003, and his second motion to reopen on April 23, 2007.  (Id.)

Ali did not leave, and on October 23, 2001, ICE took him into custody until January 26, 2002, at which time he was released on an order of supervision.  (Doc. 6 at 2).  He was re-detained between February 20, 2007 and May 17, 2007, but the government was still unable to remove him.  (Id.)  Ali was not detained again until December 17, 2025, and he is currently being held at Florida Soft Side South Detention Facility (Alligator Alcatraz).  (Id. at 3).

Ali asserts that he has no criminal record, is the father of three United States Citizen children, and maintains "a stable residence with [his] wife and children in Pembroke Pines, Florida." (Doc. 1 at 2).  He asserts that during both of his prior immigration detentions, the Embassy of Pakistan refused to issue travel documents, denying that he was a Pakistani national.  (Id.) He argues that "ICE has been attempting to obtain Pakistani travel documents for more than 20 years with no success."  (Id. at 5). He also argues that he is entitled to release because Alligator Alcatraz is unable to properly treat his cardiac disease and

hypertension, which "require continuous monitoring and specialized care." (Doc. 1 at 6).

At the time Ali filed his petition, Respondents had still not secured travel documents or otherwise demonstrated that his removal was likely in the reasonably foreseeable future.

## II. Discussion

"Once a noncitizen's order of removal becomes administratively final, the Government 'shall' remove the person within 90 days." Singh v. U.S. Attorney Gen., 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(A)). The government must detain the noncitizen during the 90-day removal period, which begins when the removal order becomes administratively final. Id. Detention may continue after the removal period, but not indefinitely.

In Zadvydas v. Davis, 533 U.S. 678 (2001), the Supreme Court held that "if removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." 533 U.S. at 700-01 (2001). If removal is not practically attainable, detention no longer serves its statutory purpose of "assuring the alien's presence at the moment of removal." Id. at 699. The Court found it unlikely Congress "believed that all reasonably foreseeably removals could be accomplished in [90 days]." Id. at 701. So, "for the sake of uniform administration in the federal courts," it established a

"presumptively reasonable period of detention" of six months—the 90-day removal period plus an additional 90 days. Id. Courts use a burden-shifting framework to judge the constitutionality of additional post-removal detention. If, after 180 days, the noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the government must provide sufficient evidence to show otherwise. Id.

Here, Respondents assert (and the Court agrees) that Ali's order of removal became final on May 5, 2000 when the BIA dismissed his appeal. (Doc. 6 at 2). He was then detained for 95 days before his release on an Order of Supervision. (Doc. 6-5 at 1). He was detained by immigration officials another 86 days between February 20, 2007 and May 17, 2007. (Id.) He was arrested a third time on December 17, 2025, and another 108 days have passed since his arrest. Because the six-month period for presumptively reasonable detention has expired, Zadvydas's burden-shifting framework applies.

Respondents argue that Ali's petition is premature because—although he has been detained much longer than 180 days in aggregate since his final order of removal—his latest (current) detention has not yet exceeded 180 days. (Doc. 6 at 6). They note that Ali was detained for a second time on December 17, 2025, and he filed this petition only 90 days later. (Id. at 9). In short,

4

they assume that the six-month presumptively reasonable period of detention resets each time a noncitizen is detained.  That assumption is inconsistent with Zadvydas because it would effectively allow ICE to detain noncitizens indefinitely and avoid judicial scrutiny by simply releasing and re-detaining them every 180 days.  The Zadvydas framework explicitly guards against indefinite detention.  533 U.S. at 682 ("Based on our conclusion that indefinite detention of aliens . . . would raise serious constitutional concerns, we construe the statute to contain an implicit 'reasonable time' limitation").

The Court finds that Ali has carried his initial burden by showing good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.  ICE made that determination when it released him in 2001 and again in 2007.  In short, ICE has had more than 25 years to remove Ali and has been unable to do so during those years or in the 108 days since his latest detention.

Respondents make no real attempt at rebuttal.  While they assert that they "sent a Travel Document Request (TDR) packet to RIO, James Dobson, for approval before being sent to consulate," they did not even make this request until more than 40 days after Ali was detained for the third time, obviating any argument that removal was reasonably foreseeable when they revoked Ali's order of supervision.  (Doc. 6-6 at 2).  They also admit that they did

5

not mail the request to the Pakistan Consulate until 42 days after Ali's third detention.  (Id.)  They do not allege that Pakistan— or any other country—has actually agreed to accept Ali (or even responded to their inquiries), and they do not explain why Pakistan would now be more amendable to recognizing Ali as a Pakistani national than it was when they made the first two requests twenty years ago.  Nor do they allege that U.S. officials have contacted any other country about accepting Ali specifically.  Under, Zadvydas, this is insufficient to show a realistic likelihood of Ali's removal in the reasonably foreseeable future.[1]

### III. Conclusion

The Court finds no significant likelihood that Shair Ali will be removed in the reasonably foreseeable future.  He is entitled to release from detention under Zadvydas, but he remains subject to the terms of the order of supervision.  If Ali fails to comply with the conditions of release, he may be subject to criminal penalties—including further detention.  See 8 U.S.C. § 1253(b);

---

[1] See 8 C.F.R. 241.13(f) ("Factors for consideration [as to whether there is a significant likelihood of removing a detained alien]. The HQPDU shall consider all the facts of the case including, but not limited to, the history of the alien's efforts to comply with the order of removal, the history of the Service's efforts to remove aliens to the country in question or to third countries, including the ongoing nature of the Service's efforts to remove this alien and the alien's assistance with those efforts, the reasonably foreseeable results of those efforts, and the views of the Department of State regarding the prospects for removal of aliens to the country or countries in question.").

Zadvydas, 533 U.S. at 695 ("[W]e nowhere deny the right of Congress ... to subject [aliens] to supervision with conditions when released from detention, or to incarcerate them where appropriate for violations of those conditions").

If removal becomes likely in the reasonably foreseeable future, ICE can re-detain Ali to "assur[e] [his] presence at the moment of removal." Zadvydas, 533 U.S. at 680.

Accordingly, it is hereby

**ORDERED:**

1.   Shair Ali's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

2.   Respondents shall release Ali within 24 hours of this Order, and they shall facilitate his transportation from the detention facility by allowing him telephone access to notify his family of when and where he can be collected.

3.   The Clerk is **DIRECTED** to terminate any pending motions and deadlines, enter judgment, and close this case.

**DONE AND ORDERED** in Fort Myers, Florida on April 8, 2026.

_____

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

7